JS - 6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL FREDERICK, et al., | CASE NO. CV 09-3419 AG (RNBx) |
| Plaintiffs, | ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEY FEES AND COSTS AND INCENTIVE AWARDS |
| v. | |
| FIA CARD SERVICES, N.A., | |
| Defendant. | |

Plaintiffs Noel Frederick, Michelle Pingol, Ken Adler, joined by plaintiff-appellant Mary Jane Augustine in *Augustine v. FIA Card Services*, Ninth Circuit No. 07-16751 (collectively, "Plaintiffs") filed this Motion for Final Approval of Settlement ("Motion") and Application for An Award of Attorney Fees and Costs and Incentive Awards ("Application"). The complaint in this case alleges that Defendant FIA Card Services, N.A. ("Defendant") retroactively increased cardholders' interest rates without advance notice in violation of several federal and state laws. After reviewing all papers and arguments submitted and permitting oral argument, the Court GRANTS the Motion and GRANTS the Application.

**BACKGROUND**

Plaintiffs Frederick and Pingol filed the original class action in spring 2009, on behalf of consumers in 18 states. Defendant here is liable also for the actions of its predecessors Bank of America, N.A. and MBNA America Bank, N.A. Plaintiff Adler was added in the First Amended Complaint and some claims were amended at that time as well.

This Court stayed the case until the final disposition of *Chase Bank USA N.A. v. McCoy*, Case No. 09-329, still pending before the U.S. Supreme Court. (Motion at 2:4-8.) At the time of the stay, the complaint alleged the following claims: violation of the California Unfair Competition Law, unjust enrichment, violation of the National Bank Act at 12 U.S.C. §§ 85 and 86, breach of contract, and violation of TILA.

Plaintiff Augustine filed a similar class action in the Eastern District of California ("Augustine Appeal"). Her case was dismissed and she filed an appeal to the Ninth Circuit. No decision has been made on the appeal because the Ninth Circuit deferred submission pending the resolution of several other appeals. Plaintiffs seek to combine the Frederick Case and the Augustine Appeal in this settlement.

The settlement class is defined as: "All persons who, between July 27, 2002 and the date of the preliminary approval of this settlement, had a credit card account with FIA Card Services, N.A. or its predecessors Bank of America, N.A. (USA) and MBNA America Bank, N.A., and who, after a default or delinquency, were assessed and paid a higher rate of interest on their credit card account, which higher rate of interest was calculated as of the beginning of the billing cycle in which the default or delinquency occurred."

The parties have reached a settlement. In October 2010, the Court granted preliminary approval of the settlement. The class is estimated to include approximately 9 million individuals. Under the terms of the settlement, Defendant will pay $10 million into a common fund. After settlement costs up to $250,000, attorney's fees, and incentive payments to Plaintiffs, the Net Settlement Amount will be divided among eligible class members. Each eligible class member receives a pro rata share of the Net Settlement amount. Settlement class

members who are current FIA customers with open accounts need not submit a claim form and will instead receive automatic distributions. Plaintiffs estimate that 4.5 million accounts will be entitled to an automatic distribution. Plaintiffs estimate that the pro rata distribution will be $1.60. A typical backdated finance charge is estimated to be under $100, which is likely the maximum that a plaintiff could receive as damages if she or he prevailed in litigation.

Any portion of the Net Settlement Amount remaining after payment to class members will go the Cy Pres Fund, which will be divided among four non-profit entities as designated by the parties and approved by the Court. For example, money from uncashed settlement checks would go to the Cy Pres Fund. It is not anticipated that much money will go to the Cy Pres Fund. The four designated non-profits are (1) the National Endowment for Financial Education (Plaintiffs' designee); (2) Junior Achievement of Southern California (Plaintiffs' designees); (3) the Institute of Consumer Financial (Defendant's designee) Education; and (4) Consumer Action (Defendant's designee).

In June 2011, the Court held a final fairness hearing on the Motion and Application. The Court then took the matter under submission for further review, and has now reviewed other very recent cases that might affect its ruling, including *In re Bluetooth Headset Liability Litigation*, — F.3d —, 2011 WL 3632604 (9th Cir. Aug. 19, 2011) and *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). The Court has now completed its review and thus issues this Order.

**ANALYSIS**

**1.   CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT**

Plaintiffs seek class certification for purposes of settlement. As set forth previously, Plaintiffs move for certification of a class of "All persons who, between July 27, 2002 and the date of the preliminary approval of this settlement, had a credit card account with FIA Card Services, N.A. or its predecessors Bank of America, N.A. (USA) and MBNA America Bank,

1  N.A., and who, after a default or delinquency, were assessed and paid a higher rate of interest on
2  their credit card account, which higher rate of interest was calculated as of the beginning of the
3  billing cycle in which the default or delinquency occurred."

4  As mentioned, the Court previously granted Plaintiffs' request to certify a class for
5  purposes of settlement on a preliminary basis. (Dkt. # 71.) The Court previously considered the
6  four prerequisites set forth in Federal Rule of Civil Procedure 23(a) and determined that this
7  class preliminarily met those requirements. Nothing has changed since then that would warrant
8  a deviation from the Court's previous ruling. Accordingly, the Court certifies the class for
9  purposes of class settlement for the reasons specified in more detail in the preliminary approval
10 order.

**2.     APPROVAL OF CLASS SETTLEMENT**

**2.1    Settlement Terms**

The main benefit to class members is that Defendants will pay $10 million into a common settlement fund. The monetary payment to class members is nominal, but Defendant has agreed to pay a total settlement amount of $10 million regardless of the number of claims filed.

As set forth previously, each eligible class member will receive a pro rata share of the Net Settlement Amount. Some class members are entitled to automatic distribution from the settlement, and class members not entitled to automatic distribution must submit a Claim Form. Almost 30,000 claim forms have been submitted. In addition, Plaintiffs estimate that 4.5 million accounts will be entitled to an automatic distribution. As noted, Plaintiffs estimate that the pro rata distribution will be $1.60. A typical backdated finance charge is under $100, which is likely the maximum that a plaintiff could receive as damages if she or he prevailed in litigation. While $1.60 is a fraction of $100, the chance of prevailing may not be high and it is uncertain how many class members would choose to litigate for such a small potential recovery.

4

As stated previously, any portion of the Net Settlement Amount remaining after payment to class members will go the Cy Pres Fund, which will be divided among four non-profit entities as designated by the parties and approved by the Court. The Court finds that the entities designated by the parties are appropriate Cy Pres Fund designees.

While several class members have objected to the proposed settlement, the Court finds that the settlement terms are fair and reasonable. The Court has considered the arguments raised by the objectors and they do not dissuade the Court from making this determination.

**2.2    Notice to Class**

"Adequate notice is critical to court approval of a class settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Since Plaintiffs seek certification under Rule 23(b)(3), notice must comply with the requirements of Rule 23(c)(2)(B):

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The parties have provided notice in accordance with the preliminary settlement agreement. Class notice included a mailed notice, electronic notice, publication notice, and internet notice. Mailed and electronic notice was sent to all class members who are current customers of FIA, and to former customers whose accounts were closed within the last 18 months and whose addresses are reasonably accessible. The internet notice included information about attorney's fees.

The number of claim forms submitted, the number of opt-outs, and the number of objectors all indicate that notice was sufficient. Approximately 30,000 former customers submitted claim forms. Based on the structure of the settlement, current customers do not need to submit claim forms. Approximately 38 people opted out of the class and 3 people objected. The Court finds that class notice was appropriate in form and substance.

### 2.3 Settlement Factors

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The settlement as a whole, rather than the component parts, is the proper subject of inquiry. *Hanlon*, 150 F.3d at 1026. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id*. at 1027.

In assessing a settlement proposal, the Court must consider various factors, including (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). But "[t]his is by no means an exhaustive list of relevant considerations." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Considering the factors set forth in *Staton*, the Court concludes that the proposed settlement is fundamentally fair, adequate, and reasonable.

### 2.4 Incentive Award

The Application seeks a $5,000 incentive award for each of the four named Plaintiffs. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis omitted). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.

One of the objectors contends that the incentive award is too high. Incentive awards are within the Court's discretion. *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000). While $5,000 may be higher than the incentive award approved in some cases, it is a reasonable figure to compensate the class representatives here. The Court concludes that the incentive award in this case is reasonable for Plaintiffs Noel Frederick, Michelle Pignol, Ken Adler, and Mary Jane Augustine.

**2.5     Attorney Fees and Costs**

Plaintiffs' counsel Barry Kramer requests attorney fees of $2.5 million. This amount is 25% of the total settlement fund. Viewed as a lodestar calculation, the lodestar is around $1.15 million and Plaintiffs' counsel requests a multiplier of 2.16, which also results in $2.5 million. The lodestar for Mr. Kramer's firm alone, which is current class counsel, is $1,028,630. He is not seeking payment for costs. The lodestar for Strange & Carpenter, which was former co-counsel for the class, for attorney fees is $126,187.50, plus costs of $2,090.41, for a total lodestar for Strange & Carpenter of $128,277.91. The total combined lodestar is $1,156,907.91, including both fees and costs.

The Court has a duty to determine whether the attorney fees sought are fair and reasonable. *Staton*, 327 F.3d at 963 (the "district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.." *In re Bluetooth*, 2011 WL

3632604 at *4. A benchmark of 25% of the common fund has been found reasonable, with adequate explanation of any adjustment upward or downward to fit the circumstances of the particular case. *Id*.

Here, the Court finds that attorney fees equal to 25% of the common fund would be reasonable. In addition, the lodestar-plus-multiplier calculation is also reasonable, and reflects the risk undertaken by Plaintiffs' counsel. While the Court may quibble with the proposed hourly rates set forth by Kramer and other counsel, if the rates were reduced, the Court would adjust the multiplier to keep the ultimate fee award at 25% of the common fund.

The Court approves an award of $2.5 million for both attorney fees and costs.

**3.  CONCLUSION**

The Court finds that the settlement is fair, reasonable, and adequate, that notice complies with the requirements of due process, that few class members have objected or opted out, and that there have been requisite showings for the incentive awards and the award of attorney fees and costs.

**DISPOSITION**

The Court GRANTS final approval and, after fully reviewing the proposed orders on the Motion and the Application, has signed them.

IT IS SO ORDERED.

DATED: August 23, 2011

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Andrew J. Guilford
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge